William WATERS and Linda Bartholomew, individually on behalf of all those similarly situated, Plaintiffs,

v.

INTERNATIONAL PRECIOUS METALS CORPORATION, Multivest, Inc., James Grosfeld, et al., Defendants.

No. 90–6863–CIV.

United States District Court, S.D. Florida.

Jan. 17, 1996.

Eric G. Lipoff, Raring & Lipoff, Newport Beach, CA, Neil A. Goteiner, Farella, Braun & Martel, San Francisco, CA, for William Waters.

Robert Lawrence Bonner, Homer and Bonner, Miami, FL, Stephen Wasinger, Robert M. Jackson, Honigman, Miller, Schwartz and Cohn, Detroit, MI, for International Precious Metals Corp.

Stephen Wasinger, Robert M. Jackson, Honigman, Miller, Schwartz and Cohn, Detroit, MI, for Multivest, Inc.

Richard G. Garrett, Hilarie Bass, Clement Ryan Reetz, Arthur J. England, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL, Peter Harlan Levitt, Virginia Herrero, Gunster, Yoakley, Valdes–Fauli & Stewart, Miami, FL, Stephen Wasinger, Robert M. Jackson, Honigman, Miller, Schwartz and Cohn, Detroit, MI, Martin I. Kaminsky, Pollack & Kaminsky, New York City, for James Grosfeld.

### ORDER ON SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING CLASS WIDE RULINGS AS TO LIABILITY AND DAMAGES ISSUES

UNGARO-BENAGES, District Judge.

THIS CAUSE came before the Court upon Defendants' Motions In Limine to Bar CLASS WIDE Rulings on Liability and Damages Issues filed October 15, 1994 (D.E. 410) and October 17, 1994 (D.E. 424).

THE MATTER was referred to Special Master Mitchell Berger. Two Reports and Recommendations dated January 13, 1995 and May 5, 1995 have been filed, recommending that Defendants' Motions be granted in part and denied in part on the grounds, primarily, that the only issues that can be tried class wide are those based on face-to-face statutory omissions. All parties have filed Objections and Responses to the Reports accompanied by extensive memoranda of law on these issues. This matter is ripe for disposition.

THIS COURT has made a *de novo* review of the entire file and record herein, and being otherwise fully advised in the premises, it is

ORDERED and ADJUDGED that Special Master Berger's Reports and Recommendations of January 13 and May 5, 1995 are hereby ADOPTED IN PART AND REVERSED IN PART for the reasons discussed below.

### INTRODUCTION

This case arises out of Defendants' operation of a commodity futures brokerage business, Multivest Options, Inc. (**"MOI"**). Plaintiffs allege that Defendants were engaged in a scheme to defraud MOI's customers by soliciting and stimulating excessive trading in commodities options by the customers without regard to the customers' interests for the fraudulent purpose of maximizing commissions (**"The Alleged Scheme"**).

According to Plaintiffs, this case is based on omissions. As such, Plaintiffs maintain that had any plaintiff known of Defendants' Alleged Scheme, the plaintiff would not have opened an account and traded with MOI. Therefore, by standing mute about the Alleged Scheme, MOI's brokers omitted a material fact necessary for a plaintiff to make a sound decision of whether or not to invest through MOI in the commodities options market.

On June 22, 1993, this Court entered an Order Adopting Magistrate Judge Brown's February 26, 1993 Report and Recommendation Certifying Plaintiffs' Second Amended Complaint (**"The Complaint"**) as a Class Action. Subsequently, on October 31, 1994, this Court denied Defendants' Motion for Decertification of Plaintiffs' State Law Claims. Once again, the Court is faced with the task of determining the suitability of proceeding with Plaintiffs' claims on a class wide basis pursuant to Defendants' Motions to bar CLASS WIDE Rulings on liability or damages.

The Court will address each of Defendants' claims as they pertain to the following areas

of law: (1) Statutory Claims Under the Commodity Exchange Act; (2) Statutory Claims Under Florida's Boiler Room Statute; (3) Florida Common Law Claims; (4) RICO Claims; (5) Fraudulent Transfer; and (6) Defendants' Affirmative Defenses. In addition, the Court will address issues raised by Special Master Berger concerning the exclusion of certain members from Plaintiffs' class.

## LEGAL ANALYSIS

### I. Statutory Claims Under The Commodities Exchange Act—Counts I, II, and III

In Counts I and II of the Complaint, Plaintiffs allege that Defendants Grosfeld, IPMC and Multi Vest, Inc.[1] violated §§ 4c(b) and 22 of the Commodity Exchange Act ("CEA") and §§ 32.9 and 33.10 of the Rules and Regulations of the Commodity Futures Trading Commission ("CFTC") by selling commodities options through written materials and company-wide oral presentations which failed to disclose material facts. In Count III, Plaintiffs allege that these Defendants violated §§ 13 and 22 of the CEA by aiding and abetting the violations alleged in Counts I and II.

Defendants claim that the issues of liability and damages under these claims cannot be determined on a CLASS WIDE basis without depriving the Defendants of their rights to a fair trial under the Seventh Amendment. According to Defendants, they are entitled to disprove causation and reliance with respect to each individual plaintiff, and they are entitled to present particularized proof of damages for each plaintiff. See Defendants' Motions to Bar CLASS WIDE Rulings. Special Master Berger found that, as long as Plaintiffs proceed consistent with their theory that this is primarily an omissions case, liability and damages can be tried on a CLASS WIDE basis with respect to the claims under the CEA. Essentially, Special Master Berger's holding was based on the position that there is a presumption of reliance in this omissions case pursuant to the holding in

Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), and, although the presumption is rebuttable, Defendants may rebut the presumption through the testimony of brokers and of customers who have opted out of the class. Furthermore, the Special Master found that damages may be assessed by a CLASS WIDE determination of the out-of-pocket capital invested by each plaintiff that the plaintiff would not have invested but for the Alleged Scheme using MOI's computer records.

Defendants object to the Special Master's Report asserting that this is not an omissions case, and, even if it is, Defendants should be given the opportunity to rebut the presumption of reliance and to present evidence with regard to the amount of damages on individualized bases. According to the Defendants, the Special Master created "Procrustean solutions" in order to maintain this case as a class action. This Court agrees with the Special Master as to Counts I, II and III insofar as he found that this is an omissions case, that the Plaintiffs are entitled to a presumption of reliance, and that the jury can assess damages on an aggregate basis subject to adjustments and a claims administration process for the reasons discussed below. However, the Court finds that Defendants must be given the opportunity to rebut reliance on an individualized basis.

### A. Liability Under The CEA Claims

▇ In order to prove liability under the CEA, a plaintiff must show that the defendant misrepresented or omitted a material fact with the knowledge or belief that the representation was false and with the intent to induce the other party to rely on the misrepresentation or omission. In addition, the plaintiff must demonstrate that he or she did rely on the misrepresentation or omission and that his or her damages resulted from such reliance. See Clayton Brokerage v. Commodity Futures Trading, 794 F.2d 573 (11th Cir.1986) (interpreting 7 U.S.C. § 6b).

1. Defendant International Precious Metals, Inc (IPMC) is owned by Defendant Multi Vest, Inc. and is the parent corporation of MOI. Defendant

Grosfeld is allegedly the sole beneficial shareholder of Multi Vest, Inc.

In interpreting provisions of the CEA, courts have traditionally looked to case law developing similar provisions of the securities laws. *See Merrill, Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 395, 102 S.Ct. 1825, 1847–48, 72 L.Ed.2d 182 (1982); *Saxe v. E.F. Hutton,* 789 F.2d 105, 108 (2d Cir.1986). Plaintiffs in the case before the Court base their CEA claims on section 4b of the CEA which is essentially the commodities corollary of Rule 10b–5 of the Securities Exchange Act of 1934.[2] As such, the Court finds that case law interpreting section 10b–5 is applicable to the analysis of the claims in these Counts.

### B. *This Is An Omissions Case—There Is A Presumption Of Reliance*

■ In order to satisfy the causation element of a cause of action under the CEA, a plaintiff must prove reliance on the alleged misrepresentation or omission. In a case based on the omission of material facts, however, reliance is presumed. *Affiliated Ute,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741. In a mixed case, based on both misrepresentations and omissions, plaintiffs do not enjoy a presumption of reliance. *See In re Amerifirst Securities Litigation,* 139 F.R.D. 423, 430 n. 4 (S.D.Fla.1991); *Kreuzfeld A.G. v. Carnehammar,* 138 F.R.D. 594 (S.D.Fla. 1991). Therefore, Defendants argue that because Plaintiffs claim that MOI brokers misrepresented facts to the customers, this is a mixed case. However, in *Huddleston v. Herman,* 640 F.2d 534 (5th Cir.1981), the Court clearly recognized that the case need not be exclusively a misrepresentation or omissions case but, rather, need only be *primarily* one or the other.

■ In this case, Plaintiffs allege that even if the brokers were truthful in all of their dealings with Plaintiffs or if Plaintiffs did not rely on any misrepresentations made by the brokers, Defendants are still liable because they "stood mute" about their Alleged Scheme. The Court views *Affiliated Ute* as intending to address precisely this kind of "standing mute." In *Affiliated Ute,* involving primarily the failure to disclose ma-

terial facts, the Court addressed the difficulty of proving reliance and held:

> Under the circumstances of this case, involving *primarily* a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of th[e] decision [to buy or sell].

*Affiliated Ute,* 406 U.S. at 153–54, 92 S.Ct. at 1472 (emphasis added). Based on Plaintiffs' theory that this case is based on Defendants' failure to disclose the "Alleged Scheme," this Court finds that this is an omissions case. Therefore, the *Affiliated Ute* presumption of reliance applies. The Court is not persuaded, despite Defendants' insistence, that Plaintiffs have destroyed the omissions theory by alleging that Defendants also made misrepresentations to them.

Having found that this is an omissions case, the Court notes, however, that it is not in complete agreement with the Special Master on this point. The Special Master classified this case as a "face to face statutory omissions" case. The Court agrees that such a characterization, by its name alone, may run the risk of creating the need for individualized proof regarding each face to face conversation. This Court views this case as involving the overall omission of a common scheme to defraud which included both oral and written communications. The written communications included printed "risk" disclosures, account agreements and other form documents which were conveyed to the Plaintiffs through the mail and other delivery services. Therefore, the Court declines to refer to this as a "face to face statutory omissions case."

### C. *Defendants Are Entitled To Rebut The Presumption Of Reliance On An Individual Basis*

#### 1. *The Presumption of Reliance Is Rebuttable*

■ As the *Huddleston* Court points out, "While *Affiliated Ute* relieves the inves-

---

**2.** Section 4b of the CEA, in language not unlike that in Rule 10b–5, declares it to be unlawful for any person to deceive or defraud any other per-

son "in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery."

tor in certain circumstances of the necessity of proving affirmatively that he relied ..., it does not eliminate the reliance element ... altogether." *Huddleston*, 640 F.2d at 547; *see also Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 482 F.2d 880 (5th Cir.1973). In other words, the presumption of reliance is not conclusive. If Defendants can prove that Plaintiffs' decision to invest would not have been affected even if Defendants had disclosed the Alleged Scheme, then Plaintiffs' recovery under the statute is barred. *Rifkin v. Crow*, 574 F.2d 256, 262 (5th Cir.1978). Accordingly, in a case such as this, in which a "course of business" or a "device, scheme or artifice" operates as a fraud, as long as the plaintiffs are able to prove the materiality of the omitted facts, proof of reliance is not prerequisite to recovery. Rather, proof of non-reliance is an affirmative defense available to the defendants. *Huddleston*, 640 F.2d at 548 (citing *Dwoskin v. Rollins, Inc.*, 634 F.2d 285, 291 n. 4 (5th Cir.)); *Rifkin*, 574 F.2d at 262. Therefore, Defendants have the burden of proving non-reliance by a preponderance of the evidence on an individual basis. *See Affiliated Ute*, 406 U.S. at 153–54, 92 S.Ct. at 1472; *see also Eleventh Circuit Pattern Jury Instructions*, Federal Claims Instruction No. 3.1.

Defendants argue that the Special Master erred in concluding that the presumption of reliance can *only* be rebutted on a class wide basis. Upon review of the Special Master's Order, this Court finds that the Defendants have misconstrued the Special Master's findings. The Special Master did not conclude that the presumption of reliance could *only* be rebutted on a CLASS WIDE basis. Rather, he held that it *may* be rebutted on a class wide basis, and that Defendants may present · the testimony of brokers/salesmen and of customers who have opted out of the class. *See* 1/13 Report and Recommendation

at 3, 5. In other words, the only limitation on the Defendants is that they are not allowed to take discovery from, nor will they be permitted to call as witnesses, absent class members, as any other result would destroy the representative nature of the case. As discussed below, the Court does not agree with the Special Master as to this conclusion under the circumstances of the case before it.

### 2. Defendants Are Entitled To Rebut Reliance On An Individual Basis

■ Defendants argue that they have "an unequivocal right" to rebut the presumption of reliance on an individual basis,[3] and that limiting them to the testimony of a limited number of brokers and the opt outs on this issue will prejudice their substantive rights to a fair trial. Upon a thorough review of the case law in this area, the Court agrees with the Defendants and finds that they are entitled to rebut the presumption on an individualized basis. The Court notes that although it reaches this conclusion on the facts before it, the Court does not take the position, as asserted by the Defendants, that the right to individually rebut the presumption of reliance is "unequivocal." Rather, the cases are silent as to whether defendants can be restricted to rebutting this presumption on a class wide basis in different circumstances.

### a. Securities and Commodities Fraud— Policy Considerations

In reaching the conclusion that Defendants must be given the opportunity to individually rebut the presumption of reliance, the Court is well aware of the many policy considerations weighing in favor of maintaining this as a class action. Federal courts have long recognized the suitability of class actions for securities and commodities fraud cases. *See Eisen v. Carlisle & Jacquelin et al.*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974);

---

3. Defendants also assert that the presumption of reliance is defeated in this case by the specific presumption in favor of Defendants that Plaintiffs understood the risks involved created by Plaintiffs' having signed the disclosure statements. *See* Defendants' Response to 1/13 Report and Recommendation at 9–10 (citing *McAnally v. Gildersleeve*, 16 F.3d 1493 (8th Cir.1994) and *Clayton Brokerage Co. v. CFTC*, 794 F.2d 573, 578 (11th Cir.)). The Court disagrees. A presumption that the plaintiffs did not rely on omissions because they read and signed disclosure statements only arises where the disclosure statements explain the omissions complained of. In this case, Plaintiffs claim they were not told about an Alleged Scheme in which the defendants were involved, not that they were misled about the risks inherent in options trading or that the commission rate was 25% as explained in the disclosure statements.

*Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *see also* 3 Louis Loss, *Securities Regulation* 1819 (2d ed. 1961). In cases involving securities or commodities fraud, there are frequently large numbers of investors who have relatively small stakes in the outcomes and who would be deterred from proceeding with lawsuits absent the availability of the class action. In recognition of this policy concern, the courts have developed a body of case law which effectively protects those small investors by making litigation available to them while safeguarding the due process concerns of defendants. As Justice Douglas recognized, "[I]n our society that is growing in complexity there are bound to be innumerable people in common disasters, calamities, or ventures who would go begging for justice without the class action but who could with all regard to due process be protected by it." *Eisen,* 417 U.S. at 184, 94 S.Ct. at 2156 (Douglas, J., dissenting in part, [*citations omitted* ]). This is consonant with the well recognized goals of the securities and commodities acts which were designed "to protect investors against fraud and ... to promote ethical standards of honesty and fair dealing. *See* H.R.Rep. No. 85, 73d Cong., 1st Sess., 1–5 (1933)." *Shores v. Sklar,* 647 F.2d 462, 470 (5th Cir.1981) (*citing Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976)). Furthermore, the goal of protecting investors and fostering the availability of litigation does not end with the certification of the class. The trial courts continue to manage securities class action litigation with these goals in mind. "The purpose of Rule 23 is to provide flexibility in the management of class actions, with the trial court taking an active role in the conduct of the litigation." *Eisen,* 417 U.S. at 184, 94 S.Ct. at 2156 (Douglas, J., dissenting in part, [*citations omitted* ]).

Mindful of these policy considerations, the Court is not decertifying the class. Instead, the Court will permit the action to proceed as a class action on the common issues, *i.e., all* issues except reliance, and subsequent to the jury's verdict, the Court will confer with the parties to develop an appropriate, manageable and lawful procedure to allow the Defendants to present proof of non-reliance on an individual basis. *See* Section VII, *infra,* for a discussion of the procedural posture of the case in light of this Order.

### b. The Fraud On The Market Theory— Basic v. Levinson

Reported case law is silent as to whether Defendants may be restricted to rebutting the presumption of reliance on a class wide basis under these circumstances. However, courts have made it clear that reliance is generally an individual issue. *See, e.g. Huddleston,* 640 F.2d at 549 ("[I]n a class action, while the materiality element can be established for the class as a whole, reliance, like damages, is a matter of individual proof."). Illustrative of this concept is the body of case law developing the fraud on the market theory. The fraud on the market theory, as applied to a developed securities market, assumes that the market price of stock reflects all available public information, including material misrepresentations. Given the difficulty of proving that each plaintiff in a securities class action relied on the integrity of the market, courts have adopted a presumption of reliance in fraud on the market cases. *See Basic,* 485 U.S. at 245, 108 S.Ct. at 990 ("Requiring a plaintiff to show a speculative state of facts, *i.e.,* how he would have acted if omitted material information had been disclosed, or if the misrepresentation had not been made, would place an unnecessarily unrealistic evidentiary burden on the Rule 10b–5 plaintiff who has traded on an impersonal market."). In *Basic,* the Court concluded that although reliance is presumed, "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic,* 485 U.S. at 248, 108 S.Ct. at 992. The examples given by the Court of ways the defendants in Basic might "sever the link" are individual inquiries.[4] Accord-

---

4. "For example, if petitioners could show that the 'market makers' were privy to the truth about the merger discussions ..., and thus that the market price would not have been affected by their misrepresentations ... Similarly, if despite petitioners' alleged fraudulent attempt to manip-

ingly, the Court held that although the District Court's certification of the class was appropriate when made, it was "subject on remand to such adjustment, if any, as developing circumstances demand."[5] *Basic*, 485 U.S. at 250, 108 S.Ct. at 993.

Post-*Basic* cases applying the fraud on the market presumption of reliance also indicate that the presumption is rebuttable through individualized proof. *Jaroslawicz v. Engelhard Corp.*, 724 F.Supp. 294, 300 (D.N.J. 1989) ("[F]raud-on-the-market reliance may be rebutted by individualized proof that focuses on a claimant's idiosyncratic investment choices."); *Biben v. Card*, 789 F.Supp. 1001 (W.D.Mo.1992) (in accord with *Jaroslawicz*, the court held that once liability is determined with respect to the class, reliance may be rebutted on an individualized basis when determining damages in a fraud-on-the-market case). Similarly, in *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981), a fraud on the market case decided before *Basic*, the Eleventh Circuit, relying primarily on *Affiliated Ute*, recognized that reliance may be presumed where defendants engaged in an elaborate, intentional scheme which deceived or defrauded purchasers of securities in the marketplace. In that case, the Eleventh Circuit took the position that when the burden of proving or disproving reliance shifts from the plaintiffs to the defendants, the defendants may rebut the presumption by showing that the plaintiff did not rely on the defendant's duty to disclose. "If the plaintiff would have followed the same course of conduct even with full and honest disclosure, then the defendant's action (or lack thereof) cannot be said to have caused plaintiffs loss." *Shores*, 647 F.2d at 468. This Court views the inquiry contemplated by the Eleventh Circuit in *Shores* as necessarily being a matter of individualized proof Moreover, in *Ross v. Bank South, N.A.*, 885 F.2d 723 (11 th Cir.1989), the Eleventh Circuit interpreted *Shores* as imposing a high threshold on plaintiffs seeking to prove securities fraud through fraud on the market reliance which, in turn, makes it more difficult for defendants to rebut the presumption. The *Ross* court found that in order to rebut the presumption, defendants in a *Shores*-type case must prove either that a plaintiffs reliance on the misrepresentation was not reasonable or that, even if without the disclosure of all material facts, the plaintiffs knew that the investments were unmarketable. Again, this Court finds that proof of either one of these factors requires individualized scrutiny.

### c. The Facts Before The Court

Even though the Alleged Scheme in this case does not present a fraud on the market scenario, the Court is persuaded that the analyses of the presumption of reliance and its rebuttal in fraud on the market cases are, at the very least, instructive in the circumstances now before the Court. As such, the Court finds that this case is most closely analogous to the scenario in *Shores* which also involved a pervasive scheme of concealment. Therefore, rebuttal will be restricted to the parameters described in *Shores*, and Defendants must show, as to each plaintiff who the Defendants contend did not rely, that reliance on the alleged omissions was unreasonable or either that the plaintiff knew of the Alleged Scheme or would have followed the same course of conduct even with fill and honest disclosure.

One of the most significant differences between the *Shores* case and the case before the Court is that, whereas the fraud in *Shores* went to the nature of the investment, the fraud in this case goes to the scheme through which customers were induced to invest and not the nature of the commodities in which they invested. For this reason, the Defendants' reliance on *McAnally v. Gildersleeve*, 16 F.3d 1493 (8th Cir.1994), is misplaced. Defendants rely on *McAnally* as

---

ulate market price, news of the merger discussions credibly entered the market and dissipated the effects of the misstatements ... Petitioners also could rebut the presumption of reliance as to plaintiffs who would have divested themselves of their Basic shares without relying on the integrity of the market." *Basic*, 485 U.S. at 247–49, 108 S.Ct. at 991–93.

5. Unfortunately, the disposition of *Basic* upon remand is not instructive because the parties settled before the District Court reached any conclusions regarding defendants' rebuttal of the reliance presumption.

dictating that reliance must be proven on an individualized basis. *McAnally* was based on face to face misrepresentations to the plaintiffs regarding the risks of trading in ETOs, unlike this case which involves the failure to disclose information to the plaintiffs regarding a common scheme perpetrated on all of MOI's customers which scheme constituted a risk inherent in investing in ETOs through MOI in particular. Additionally, *McAnally* was not a class action. Defendants also rely on *McAnally* for the proposition that the signing of risk disclosure statements creates the presumption that the plaintiffs understood the risks and did not rely on any alleged omissions. Again, *McAnally* is inapposite. The risk disclosure statements disclosed risks involved with investing in ETOs, the basis of the misrepresentations in *McAnally*. This case is based on omissions regarding the risks involved with investing through MOI, namely the existence of the Alleged Scheme. Therefore, under the Plaintiffs' theory of liability, the risk disclosure statements do not reveal the relevant material information.

In conclusion, the Court finds that the facts of the case before the Court present a situation which is most closely analogous to *Shores*, despite the fact that this is not a fraud on the market case. Therefore, when the procedure is developed for resolving the reliance issue, the Court will be guided by the *Shores* case, and Defendants will be given the opportunity to rebut reliance on an individualized basis only by showing either that a plaintiffs reliance was unreasonable under the circumstances or that a plaintiff knew of the Alleged Scheme or would have followed the same course of conduct with full and honest disclosure. As Plaintiffs point out, it is difficult to envision that there are investors among the plaintiffs who would have invested through MOI with full knowledge of the Alleged Scheme, for as the Supreme Court commented, "Who would knowingly roll the dice in a crooked crap game?" *Basic*, 485 U.S. at 247, 108 S.Ct. at 991. The burden is on the Defendants to prove that there are.

#### d. Proof of Non–Reliance

The Special Master held that Defendants may rebut the presumption of reliance on a class wide basis through the testimony of a limited number of brokers and opt-outs. As discussed above, the Court finds that Defendants cannot fairly be required to rebut the presumption of reliance on a class wide basis. Further, in light of the Court's decision to restrict the trial to common issues only, the testimony of opt-outs and the brokers on the issue of reliance is irrelevant. Therefore, the Special Master is reversed to the extent he contemplated testimony by opt-out plaintiffs and a limited number of brokers on the issue of reliance; instead, such testimony will be barred during the upcoming trial with respect to liability under the CEA claims.

### D. Loss Causation and Damages

The Special Master recommended that loss causation and damages may be proven class wide. Defendants argue that the CEA requires a showing that Plaintiffs' losses were proximately caused by Defendants' alleged misrepresentations or omissions and that but-for damages are inappropriate under the circumstances of this case. As discussed below, this Court finds that the loss causation and damages inquiries do not require individualized scrutiny under the facts of this case.

#### 1. Loss Causation

Defendants argue that the CEA requires a showing that Plaintiffs' losses were proximately caused by Defendants' alleged misrepresentations or omissions and that but-for damages are inappropriate under the circumstances of this case. *Citing Clayton Brokerage Co. of St. Louis, Inc. v. C.F.T.C.*, 794 F.2d 573 (11th Cir.1986), and *Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 903 F.2d 1014 (5th Cir.1990). The Court agrees that loss causation is an element of the CEA claims at issue in this case and that, with respect to loss causation, proximate cause must be shown.

As discussed above, section 4b of the CEA, 7 U.S.C. § 6b, prohibits fraudulent misrepresentation or omission in connection with the making of commodities futures contracts on behalf of another person. *Clayton*,

794 F.2d at 578 (*citing Chipser v. Kohlmeyer & Co.*, 600 F.2d 1061 (5th Cir.1979)). Section 4b, however, incorporates the common law principle that one who misrepresents or omits a material fact is liable only for those losses flowing from actions reasonably induced ("caused") by the misrepresentation or omission. *Clayton*, 794 F.2d at 578; *see also Chipser*, 600 F.2d at 1068. Therefore, a plaintiff proceeding with a claim under section 4b must show "loss causation." Whereas a showing that the plaintiffs reliance induced him or her to enter into the transaction ("but for" allegations) satisfies the "transaction causation" requirement, loss causation, on the other hand, requires a direct or proximate relationship between the loss and the misrepresentation or omission and may not be supplied by but for allegations. *Wilson v. Ruffa & Hanover, P.C.*, 844 F.2d 81, 86 (2d Cir.1988).

■ In a securities fraud case, the misrepresentation must touch upon the actual reasons for the securities' decline in value to be considered directly related to the losses suffered. *Huddleston*, 640 F.2d at 549 n. 24. However, in a commodities fraud case, misrepresentations or omissions will never be directly related to the value of the commodity. Rather, the decision to invest in commodities at all may be precipitated by omissions concerning the risks involved in trading in commodities. *See Garnatz v. Stifel, Nicolaus & Co., Inc.*, 559 F.2d 1357, 1361 (8th Cir.1977), *cert. den.* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978) (court recognized that loss causation was not based on the price at which the plaintiff bought but that he was induced to buy at all); *see also Clayton*, 794 F.2d 573 (where plaintiff initiated the trades in his commodities account with defendants, court found that defendants were nevertheless liable because plaintiffs continued participation in trading was induced by misrepresentations by the defendants about the risk of loss therefrom); *Rinfret, Inc. v. Drexel Burnham Lambert Inc.*, 661 F.Supp. 611, 615 (E.D.N.Y.1987) ("While the courts have recognized causes of action under the CEA for churning and unauthorized trading, neither of which concern the nature of the commodities traded, both of those causes of action involve breaches of a broker's duty to execute only those trades that will benefit the client, and, in the case of unauthorized trading, have previously been cleared with the client." [*citations omitted* ] ). Therefore, in an action under the CEA, a plaintiff may satisfy the loss causation requirement that the loss be directly related to the misrepresentation or omission by showing that the decision to invest was induced by the misrepresentation or omission and that the investment that was so induced resulted in the losses complained of.

■ In the case at bar, Plaintiffs' claim is expressly based on the theory that Defendants proximately caused their losses by fraudulently inducing them to invest in options through MOI by failing to disclose material facts about the risks inherent in trading in commodities options with MOI, namely the existence of the Alleged Scheme. As discussed below with respect to the calculation of damages, in this case, the Court finds that Plaintiffs' losses are the out of pocket capital that Plaintiffs were induced to invest with MOI by Defendants' failure to disclose the Alleged Scheme. Accordingly, the Court agrees with the Special Master that the loss causation requirement does not create any additional hurdles that might cause this case to become unmanageable as a class action. Rather, as discussed in the preceding section, although the reliance aspect dictates the need to allow the Defendants the opportunity to present individualized proof, it does not present an insurmountable burden for class action management. And, as discussed below, the losses in this case are the out of pocket capital invested by the Plaintiffs, and those amounts may be proven on a class wide basis.

## 2. Damages

■ The Special Master held that damages may be tried CLASS WIDE for these claims, and that the damages are the return of the out-of-pocket capital invested by a plaintiff which the plaintiff would not have invested but for the Defendants' omissions regarding the Alleged Scheme. According to the Special Master, this measure of damages has the effect of restoring the plaintiffs to

the position they would have been in had they never had a relationship with MOI. *Citing Clayton,* 794 F.2d 573. The Special Master further held that the damages do not include the loss of profits which were temporarily gained by the plaintiff in the course of trading with MOI, and any gains during the course of the relationship are not to be considered. "The only damage is a return of original capital invested by a Plaintiff." 5/5 R & R at 4.

The Court agrees with the Special Master that the appropriate measure of damages in this case is out of pocket capital invested. Under the statute, and consistent with Plaintiffs' theory of the case, Plaintiffs are entitled to the return of any out-of-pocket capital invested by each plaintiff which the plaintiff would not have invested but for Defendants' Alleged Scheme. Therefore, damages will be measured according to the total amount of out of pocket capital invested by each individual plaintiff. Profits and reinvested capital will not be calculated. The Court agrees with the Special Master that these amounts are ascertainable through review of MOI's customer records. This measure of damages has the effect of returning the plaintiffs to the position they would have been in had they not invested through MOI and is consistent with Plaintiffs' theory of the case that they would not have invested through MOI had they known of Defendants' Alleged Scheme and that such investment was the cause of their losses.

Therefore, if Plaintiffs succeed in proving liability under the CEA claims, then an aggregate measure of damages will be determined through use of MOI's customer records based on the total amount of capital invested by all members of the class. This amount will be subject to adjustment to the extent of the amount of capital invested by those plaintiffs whom the Defendants are able to prove did not rely on the alleged omissions. The Court will address issues regarding claims administration in Section VII, *infra.*[6]

*E. Conclusion*

In Counts I, II and III, Plaintiffs allege that Defendants violated the CEA and the Rules and Regulations of the CFTC by failing to disclose to Plaintiffs the existence of an Alleged Scheme when inducing the Plaintiffs to invest in ETOs through MOI. A claim for a violation of these provisions requires a showing that the Defendants misrepresented or omitted a material fact with the knowledge or belief that the representation was false and with the intent to induce the other party to rely. Furthermore, the plaintiff must demonstrate that he or she did rely on the misrepresentation or omission and that his or her damages resulted from such reliance. As Plaintiffs have asserted that their theory of the case is centered primarily on omissions by the Defendants, if the Plaintiffs prove that the Defendants failed to disclose the Alleged Scheme and that the omission was material to the Plaintiffs' decisions to invest with MOI, then reliance on the omissions will be presumed. The Court finds that these determinations and the assessment of aggregate damages may be made by the jury on a class wide basis. Thereafter, the damages, if any, will be subject to adjustment to the extent that Defendants, in subsequent proceedings, can demonstrate that individual plaintiff class members unreasonably relied or that they would have invested through MOI even if they were aware of the Alleged Scheme. *See* Section VII, *infra,* for a further discussion of the procedural posture of this case in light of this Order.

For the foregoing reasons, the Court finds that CLASS WIDE rulings as to all elements of Counts I, II, and III of the Amended Complaint are appropriate except with respect to the issue of reliance. Therefore, Special Master Berger's Report and Recommendation as to Counts I, II, and III is AFFIRMED IN PART AND REVERSED IN PART, and Defendants' Motions to Bar CLASS WIDE Rulings as to Liability and

---

6. The Court notes that, as per this Order, the measure of damages is the same under all Counts in that the Court will look to the amount of out of pocket capital that each member of the class was induced by the alleged omissions to invest

through MOI. In any event, the Court finds that the parties will proceed to verdict on liability and an aggregate amount of damages under the Boiler Room claim as discussed *infra.*

Damages on these claims are GRANTED IN PART AND DENIED IN PART.

## II. *Statutory Claims Under Florida's Boiler Room Statute—Count IV*

In Count IV of the Complaint, Plaintiffs allege that Defendants Grosfeld, IPMC and Multivest, Inc. violated Fla. St. § 517.301 by selling investments in ETOs while operating a boiler room operation as defined by Fla.St. § 517.021(5). Plaintiffs seek rescissionary damages for said violations of Florida's statutes.

Defendants claim that the issues of liability and damages under this claim cannot be determined on a class wide basis without depriving the Defendants of their rights to a fair trial because the elements of a claim for liability and damages under Florida's boiler room statute require individualized proof Special Master Berger held that Count IV may be tried entirely on a class wide basis. The Special Master also found that the presumption of reliance applies to the claim and that proof of loss causation is not required under § 517.301. *See* 1/13 R & R at 3. As to damages, the Special Master recommended that they be determined consistent with *Kane v. Shearson Lehman Hutton, Inc.,* 916 F.2d 643 (11th Cir.1990).

Defendants object to the Special Master's Report and Recommendation asserting that there is a question of whether there is an investment under § 517.301, that there is no presumption of reliance under § 517.301, and that they should be given the opportunity to present individualized proof with respect to transaction causation and justifiable reliance. This Court agrees with the Special Master as to Count IV that liability and damages under the Florida Boiler Room Statute claims may be determined on a class wide basis, but the Court reverses the Special Master's holding that reliance is an element of a claim under the Florida Statute and modifies the Special Master's holding with regard to damages for the following reasons.

### A. *Plaintiffs' Claims Involve Investments Under § 517.301(2)*

Fla.Stat. § 517.301(2) reads, in pertinent part: "For purposes of this section, s. 517.311, and s. 517.312, the term 'investment' means any commitment of money or property principally induced by a representation that an economic benefit may be derived from such commitment." Defendants allege that there is a question regarding whether the ETO transactions at issue in this case are investments under the statute and that the issue requires individualized proof of whether each plaintiff was induced to enter into the transactions. The Court finds that this issue was already addressed in two previous orders of this Court: (1) Order Granting Plaintiffs' Motion for Partial Summary Judgment On the Issue of Defendants' Liability Under Florida's Boiler Room Statute (D.E. 330) at 15 and (2) Order Denying Defendants' Motion For Partial Summary Judgment That the Accounts of Plaintiffs Did Not Constitute An "Investment" Within the Meaning of F.S. 517.301(2) (D.E. 531) (this motion was treated as a motion for reconsideration by the Court). In both orders, the Court found that Plaintiffs' ETO transactions constitute investments within the meaning of the statute, and Defendants fail to present any reason why the Court should depart from that determination as regards the class as a whole at this juncture.

### B. *Reliance Is Not An Element Of A Claim Under Florida's Boiler Room Statute*

The elements of a claim under the Florida Boiler Room statute are:

(1) that the defendant offered, sold or purchased an investment or security; and

(2) that "in connection with" such offer, sale or purchase, the defendant

 a. employed any device, scheme or artifice to defraud;

 b. obtained money or property by means of an untrue statement of material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

 c. engaged in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

*See* Fla.Stat. § 517.301(1). The civil right of action for violations of section 517.301 is expressly provided for in section 517.211. Section 517.211 provides, in pertinent part:

> (2) Any person purchasing or selling a security in violation of s.517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, shall be jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission ...

Fla.Stat. § 517.211(2). Nowhere in the statute is it provided that a plaintiff proceeding with a cause of action for a violation of Florida's Boiler Room statute must prove reliance or loss causation.

Section 12(2) of the Securities Act of 1933,[7] the federal antifraud provision, also contains an express right of action. That statute, like the Florida statute, also contains no express requirement that a plaintiff prove reliance or loss causation. Under federal case law interpreting section 12(2), a plaintiff proceeding thereunder need not demonstrate reliance or loss causation. *See* discussion, *infra*, p. 494. Upon a certified question from the Eleventh Circuit, Florida's Supreme Court determined that Florida's Boiler Room Statute, as enforced through the civil remedies provision, has the same effect as section 12(2), and held that loss causation, which "has never been required by federal courts interpreting section 12(2)," is not an element of a cause of action under the Florida Statutes. *E.F. Hutton & Co., Inc. v. Rousseff,* 537 So.2d 978, 981 (Fla.1989) ("The effect of section 517.211 is similar to that of federal

section 12(2) except that whereas 12(2) protects only buyers, section 517.211 protects both buyers and sellers.... We answer the certified question in the negative.") (*citing* L. Loss, *Fundamentals of Securities Regulation,* 712, 887–892). In light of the Florida Supreme Court's interpretation of the state statute, the Eleventh Circuit affirmed the District Court opinion in favor of the plaintiff/investor on the grounds that the plaintiff does not need to prove loss causation under Florida's Boiler Room statute. This Court agrees with the Florida Supreme Court's conclusion that section 517.211 is similar in effect to section 12(2) and finds that federal case law interpreting section 12(2) provides guidance as to the proper interpretation of section 517.211.[8] The significance of this conclusion is in the less restrictive causation requirements imposed on the plaintiff proceeding under section 12(2) as opposed to 10b–5.

In a 10b–5 cause of action, a plaintiff must prove transaction causation and loss causation. Therefore, the 10b–5 plaintiff must demonstrate both that the alleged misrepresentation or omission caused him or her to enter into the investment with the defendant (transaction causation) and that, as a result of the alleged misrepresentation or omission, the plaintiff suffered the losses complained of (loss causation). *See Huddleston,* 640 F.2d at 549 n. 24. Therefore, under 10b–5, even if the defendant's misconduct induces the plaintiff to enter into the transaction, if the particular loss complained of is caused by other supervening factors unrelated to the defendant's conduct, then the plaintiff cannot recover. *Bruschi v. Brown,* 876 F.2d 1526,

---

7. Section 12(2) provides:

> Any person who ...:
>> (2) offers or sells a security ..., by the use of any means or instrument of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statement, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have

known, of such untruth or omission, shall be liable to the person purchasing such security from him ... *to recover the consideration paid for such security with interest thereon ...*
> 15 U.S.C. § 77*l*(2).

8. The Court notes that Defendants have expressed agreement with this conclusion to the extent that Defendant Grosfeld states, in his Supplement to Objections to the 1/13 R & R filed January 31, 1995 at p. 4 n. 3, that "Florida's boiler room statute is a transaction-specific statute, similar to § 12(2) of the Securities Act of 1933 (*upon which it is modeled).*" (emphasis added).

1530 (11th Cir.1989). As discussed in Section I, *supra,* courts look to case law analyzing 10b–5 in interpreting the CEA fraud provisions and require a showing of both transaction causation and loss causation under that statute, as well.

Section 12(2), on the other hand, is more narrowly focused than 10b–5 and expressly provides for a private right of action in the statute. The express right of action under 12(2) does not impose such causation requirements.[9] As such, federal courts interpreting 12(2) find that "[a] claim under § 12(2) may be grounded on untrue statements and omissions that make a memorandum misleading, whether or not the plaintiff relied on the memorandum or even read it, and may justify rescission, whether or not the plaintiff was damaged." *Caviness v. Derand Resources Corp.,* 983 F.2d 1295, 1305 (4th Cir.1993); *see also Ballay v. Legg Mason Wood Walker, Inc.,* 925 F.2d 682, 689 (3d Cir.1991); *MidAmerica Federal S & L v. Shearson/American Express, Inc.,* 886 F.2d 1249, 1256 (10th Cir.1989); *Bastian v. Petren Resources Corp.* 892 F.2d 680, 684 (7th Cir.), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990); Michael J. Kaufman, *Loss Causation: Exposing a Fraud on Securities Law Jurisprudence,* 24 Ind.L.Rev. 357, 369–70 (1991) ( [12(2) ] is thought to create a "broad rescissionary measure of damages," and it allows defrauded buyers to recover damages without showing causation.) (*quoting* Andrew L. Merritt, *A Consistent Model of Loss Causation in Securities Fraud Litigation: Suiting the Remedy to the Wrong,* 66 Tex.L.Rev. 469, 491 (1988)).

In reaching the conclusion that the comparable federal statute is 12(2) rather than 10b–5, the Florida Supreme Court reasoned that the private right of action under 10b–5 was created by courts and developed by case law, rather than provided for in the statute, to address a broad spectrum of fraud in connection with the purchase or sale of securities, and, because the potential range of fraud covered by the Rule is so wide (including "any person" who violates the provision,

encompassing any activity constituting a misleading or deceptive practice), the heightened causation requirements under the 10b–5 cause of action are necessary to prevent the rule from affording unlimited liability. Section 12(2), on the other hand, expressly provides for a private right of action and contains other built-in limitations on liability (*i.e.* targeting solely misrepresentations or omissions of a material fact, and restricting the remedy to consideration paid), and; therefore, there is no need to impose the added limitation of causation requirements. *Currie v. Cayman Resources Corp.,* 835 F.2d 780, 782 (11th Cir.1988); *see Hill York Corp. v. American International Franchises, Inc.,* 448 F.2d 680, 695 (5th Cir.1971); *Sanders v. John Nuveen & Co., Inc.,* 619 F.2d 1222, 1225 (7th Cir.1980); *Gilbert v. Nixon,* 429 F.2d 348, 356 (10th Cir.1970); *Johns Hopkins Univ. v. Hutton,* 422 F.2d 1124, 1129 (4th Cir.1970); *see also* Bromberg and Lowenfels, *Securities Fraud and Commodities Fraud,* s. 15.04(140), p. 15:82. The Florida statute, like 12(2), expressly provides for a private right of action. Furthermore, the Florida provisions also contain built-in limitations like those provided in 12(2). Therefore, the Florida Supreme Court held, and this Court agrees, that 12(2) is clearly the comparable federal statute.

As noted above, the Florida Supreme Court reached the conclusion that section 517.301, as enforced through 517.211, is most closely analogous to 12(2) in the context of answering a certified question from the Eleventh Circuit as to whether loss causation is an element of an action under section 517.211 and 517.301. This Court agrees with the conclusion that the two statutes are analogous. In addition, this Court agrees with and follows the Florida Supreme Court's holding, adopted by the Eleventh Circuit in *Rousseff v. E.F. Hutton Co., Inc.,* 867 F.2d 1281, 1282 (11th Cir.1989), that loss causation is not an element of a cause of action under the Florida statute. However, the Florida Supreme Court also stated that "[b]oth sections appear to be patterned after the common law contract cause of action termed

---

9. The Court further notes that section 12(2) does not require a showing of scienter as a prerequisite to recovery. Rather, the burden is on the defendant to demonstrate that he did not know, and, in the exercise of reasonable care, could not have known, of the untruth or omission.

rescission," and listed the elements of rescission as including "misrepresentation of a material fact on which the buyer justifiably relied." *Rousseff*, 537 So.2d at 981 (*citing* L, Loss at 873). This Court finds that any inference that may be drawn from the Florida Supreme Court's list of the elements of rescission that suggests that reliance may be an element of the Florida statutes is purely *dicta*. In addition, such a conclusion would conflict with the Florida Supreme Court's analogy between rescission and both 12(2) and the Florida statutes. As discussed above, federal case law analyzing 12(2) holds that a cause of action under that section does not require a showing of reliance or loss causation. *See* discussion, *supra*, at p. 494. This Court finds that the same is true of the antifraud provisions of Florida's Blue Sky Law, including section 517.301.

The Court is also cognizant of the conflicting positions this Circuit has taken on this issue. In *Rousseff v. E.F. Hutton*, 867 F.2d at 1281, the Eleventh Circuit adopted the Florida Supreme Court's answer to the certified question and held that the plaintiff/appellee did not have to prove loss causation as part of his claim under the Florida statute. However, in *First Union Discount Brokerage Services v. Milos*, 997 F.2d 835, 844 (11th Cir.1993), the Eleventh Circuit stated, "To establish a § 517.301 claim, the [plaintiffs] had to prove that, in connection with a securities transaction, they justifiably relied on, and were proximately harmed by, a false representation or omission of material fact negligently made by [defendant]." *Id.* at 844–45 (*citing Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1046 (11th Cir. 1987)). In that case, the court affirmed the trial court's grant of summary judgment against the plaintiffs on claims based on § 517.301, common law fraud, and breach of fiduciary duty on the grounds that the plaintiffs could not have justifiably relied on the alleged misrepresentations and that the plaintiffs' losses were not a result of their alleged reliance. Given the conflicting opinions, this Court finds that the Eleventh Circuit opinion in *Rousseff*, adopting the Florida Supreme Court's interpretation of the Florida statute, controls for the following reasons. First, the *Rousseff* case specifically addressed the issue of the correct interpretation of the Florida statute and whether loss causation is an element under it. *First Union* on the other hand, is not a statutory interpretation case, but, rather, addresses liability without distinguishing among the counts in the complaint such that the court would have addressed the reliance and causation issues, anyway, under the common law counts. Second, in *First Union*, the court relied on *Gochnauer*, 810 F.2d 1042, a case decided in 1987, before *Rousseff*, and *Merrill Lynch, Pierce, Fenner & Smith v. Byrne*, 320 So.2d 436 (Fla.Dist.Ct.App.1975), a state district court of appeal case also decided before the state supreme court decision in *Rousseff*. The court did not acknowledge or cite the *Rousseff* decision.

Based on the foregoing discussion, and in light of the Eleventh Circuit decision in *Rousseff v. E.F. Hutton*, 867 F.2d 1281, following the Florida Supreme Court's decision in *E.F. Hutton v. Rousseff*, 537 So.2d 978, this Court finds that loss causation is not an element of a cause of action under Florida's Boiler Room Statute embodied in section 517.301 and enforced through 517.211. Furthermore, this Court agrees with the Florida Supreme Court's finding that section 517.211 is analogous to section 12(2) of the federal statute. Both provisions expressly impose liability on a defined group of persons for a narrow range of activities, and both contain an express and exclusive remedy without requiring a showing of loss causation. Finally, this Court finds that there is no reason why a plaintiff proceeding under a 517.211 cause of action for violations of 517.301 should be required to prove reliance. Like loss causation, nothing in the statute suggests that reliance is an element of a claim brought under it. And, in light of the fact that the *Rousseff* courts held that loss causation is not an element, it logically follows that reliance should not be required, as the two concepts are so closely related. Furthermore, federal courts do not require a showing of reliance by a plaintiff proceeding under 12(2). In a 12(2) cause of action, a plaintiff/purchaser of a security must demonstrate that the defendant made a material misrepresentation or omission in the offering or sale of the securi-

ty, and a defendant may present evidence to prove that he did not know, and in the exercise of reasonable care, could not have known of the misrepresentation or omission.[10] Plaintiffs proceeding under section 12(2) of the federal statute are not required to prove reliance, and, because of this, a purchaser's investment sophistication is immaterial to a section 12(2) claim. *See, e.g., Wright v. National Warranty Co., L.P.,* 953 F.2d 256 (6th Cir.1992). This Court sees no reason why a plaintiff proceeding under section 517.211 should be required to prove anything more than a plaintiff proceeding under 12(2). As one author observed, "The *Rousseff* court was correct in taking the first step toward that result by refusing to read into section 517.211 an element of loss causation." Michael A. Hanzman, *Civil Remedies Under the Florida Securities and Investor Protection Act,* 64 Fla. Bar Jour. 36 (Oct.1990).

As the Court finds that reliance is not an element, the Court need not address the parties' arguments regarding whether there is a presumption of reliance under the statute. The Court is aware that, in a prior Order, addressing Plaintiffs' Motion For Partial Summary Judgment dated November 17, 1994, this Court espoused the position that a plaintiff must prove "transaction causation" under section 517.211 relying on *First Union. See* This Court's Order On Plaintiffs Motion For Partial Summary Judgment dated November 17, 1994 (D.E. 511) at 2–3. However, upon revisiting the issue in light of the motions now before the Court, and upon a thorough review of the case law, the Court now holds that reliance is not an element of a cause of action under section 517.301 as enforced through 517.211. Accordingly, this Court's Order On Plaintiffs' Motion For Partial Summary Judgment dated November 17, 1994 (D.E. 511) is vacated to the extent that this Court stated that reliance is an element of a cause of action under Florida's Boiler Room Statute.

## C. Damages Under § 517.301

■ In Count IV, Plaintiffs seek rescissionary damages on a class wide basis. Special Master Berger held that the damages under the Florida statutory claims may be determined on a class wide basis according to *Kane v. Shearson Lehman Hutton, Inc.,* 916 F.2d 643 (11th Cir.1990), in which the Court found that the plaintiffs were entitled to rescission. According to the Special Master, rescission is consistent with the Plaintiffs' theory of the case, that they would not have invested with MOI had they known of the Alleged Scheme. Therefore, if plaintiffs prove liability, they are entitled to a return of the consideration paid for each investment through MOI plus interest from the date of purchase, less any value received for the sale or profit of that investment. The Special Master further held that compensatory damages under the statute could not be netted (reduced by profits earned on other transactions with the Defendants). Defendants argue that *Kane* damages require an analysis of each specific transaction to determine precisely what should be returned to each plaintiff because, under *Kane,* the court must determine any value received by each plaintiff on each transaction and reduce his damages by that amount, and this cannot be done on a class wide basis. The Court agrees with the Special Master's holding that, if Plaintiffs prove liability under Florida's Boiler Room statute, they are entitled to rescissionary damages, but the Court holds that damages shall be determined as discussed below.

A reading of Florida's Boiler Room statute reveals that in an action for the violation of § 517.301, the defrauded purchaser is entitled to rescissionary damages from the defendant. Fla.Stat. § 517.312(2). The statute explains:

(3) In an action for rescission:

(a) A purchaser may recover the consideration paid for the security or investment,

---

10. The test for whether an omitted fact is material under the securities laws is whether there is a substantial likelihood that the omitted fact "would have been viewed by a reasonable investor as having significantly altered the "total mix" of information made available. *Basic,* 485 U.S. at 231–32, 108 S.Ct. at 983–84 (*quoting TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *see also Johns Hopkins University,* 422 F.2d at 1128–29 (under 12(2), a fact is material if a reasonable investor would have attached importance to it).

plus interest thereon at the legal rate, less the amount of any income received by the purchaser on the security or investment upon tender of the security or investment. Fla.Stat. § 517.211(3)(a).[11] In effect, the plaintiff is restored to the position he would have been in had he not been induced to invest by the defendant's fraud.

In *Kane*, the court held that the defrauded plaintiff was entitled to rescission or rescissionary damages for losses incurred from a fraudulently induced transaction. The court further held that, in light of the intent found in both Florida and federal law to enforce antifraud provisions stringently, there is no support to be found for a "netting" theory which would result in the reduction of plaintiffs' overall recoveries by profits from earlier transactions in the same security through the same broker. *Kane*, 916 F.2d at 646. Thus, according to the *Kane* court, the plaintiff was entitled to rescind the fraudulently induced transaction despite the fact that the plaintiff's investment included profits from earlier transactions in the security with the same broker. *Id.* Based on *Kane's* transaction approach and its conclusion that netting should not be applied, the Defendants in the case at bar argue that proof of damages under the Florida statute requires individualized determinations of which transactions Plaintiffs were fraudulently induced to enter, and how much they lost on each transaction. This Court, however, finds that, despite the transaction approach used in *Kane*, damages can be determined consistent with the statute on a class wide basis and should be so determined in this case.

At the outset, the Court points out that there are important distinctions between the facts of *Kane* and the case at bar which lead to a different result when a rescissionary measure of damages is applied. In *Kane*, as discussed in the preceding paragraph, the plaintiffs sought damages based on their losses from one transaction in a specific security with the defendant. They had previously earned a profit in another transaction in the same security with the same defendant. According to the plaintiffs in *Kane*, they would not have entered into the particular transaction or invested in the particular security that resulted in the loss but for the defendant's fraud in connection with the specific transaction. Therefore, in formulating the appropriate damages to return the plaintiff to the position he would have been in had he not been induced by defendant's fraud, the court looked to the fraudulently induced transaction. In the case at bar, Plaintiffs allege that MOI was engaged in an overall fraudulent scheme by which it induced Plaintiffs to invest through MOI. The fraud, according to Plaintiffs' theory, was not undertaken with respect to particular transactions. Rather, the fraud took place at the point of inducing Plaintiffs to become customers of and invest through MOI in the first place by omitting the fact that Defendants were engaged in a scheme to induce Plaintiffs to engage in excessive trading to maximize Defendants' commissions. Therefore, in formulating the appropriate damages to return the Plaintiffs to the position they would have been in had they not been induced by Defendants' alleged fraud, the Court must look to the fraudulently induced decision · to invest through MOI in the first place. This is consistent with Plaintiffs' theory of the case, because Plaintiffs intend to prove liability on a class wide as · opposed to a transaction by transaction basis, and they are, therefore, entitled to a class wide as opposed to a transaction by transaction remedy.

---

**11.** The Court notes that on November 17, 1994, the undersigned issued an Order On Plaintiffs' Motion for Summary Judgment Establishing the Appropriate Measure of Damages Under the Florida Boiler Room Statute (D.E. 511) in which the Court discussed its position with regard to compensatory damages under subsection (4) of the statute. In that Order, the Court held that such damages shall be determined according to the plain language of the statute, and that they would not be netted. At this point, the Court reaffirms its position that Boiler Room Statute damages shall be determined according to the language of the statute and without netting, but the Court finds, as the Special Master concluded, that rescission is more consistent with plaintiffs' theory of the case because it has the effect of restoring the Plaintiffs to the position they would have been in had they not invested with MOI at all. As such, the Court will rely on subsection (3) of the statute in determining the damages under this claim. The end result is the same under subsections (3) (rescission) and (4) (compensatory damages).

As *Kane*'s application of rescissionary damages has a different result from the use of rescission in this case, so, too, does the application of *Kane*'s holding that netting should not be applied. In *Kane* the holding had the effect of preventing the netting of any profits received in previous transactions with the defendant against the losses from the transaction that was the subject of the action. In the case at bar, *Kane*'s holding with respect to netting would only have the effect of preventing the netting of any profits Plaintiffs might have gained by investing with MOI at an earlier time, before Defendants were engaged in the Alleged Scheme, against the losses incurred by the Plaintiffs who were induced into investing through MOI after the scheme was in place. No such Plaintiff exists, however, because, according to Plaintiffs, MOI was always engaged in the Alleged Scheme.

In conclusion, based on a reading of the plain language of the statute, and in consideration of the holding in *Kane*, the Court finds that damages in this case will be rescissionary with the goal of restoring the Plaintiffs to the position they would have been in had they not invested with MOI. This result, as discussed above, is consistent with Plaintiffs' theory of the case, which they intend to prove on a class wide basis alleging a class wide scheme as opposed to a transaction by transaction scheme. Furthermore, the Court finds that this conclusion is consistent with the well established goals of the federal and state securities acts. As the Eleventh Circuit pointed out in *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678 (11th Cir.1983), "Florida courts recognize[ ] the advantages of a more flexible approach to calculating damages in fraud cases." *Id.* at 686. Accordingly, Florida courts have adopted different measures of damages "in order to do justice as the circumstances demand." *DuPuis v. 79th Street Hotel, Inc.* 231 So.2d 532, 536 (Fla. 3d DCA 1970). Therefore, the Court holds that if Plaintiffs prove liability under Florida's Boiler Room Statute, they shall then be entitled to a return of the difference between their out of pocket capital investment with MOI plus interest and what they received back from MOI. According to the Plaintiffs and the Special Master, this

formula can be applied class wide through the use of MOI's customer records.

### D. *Conclusion*

Based on the foregoing, the Court finds that class wide rulings as to liability and damages under Count IV of the Complaint as to Florida's Boiler Room Statute are appropriate. Loss causation and reliance are not elements of a claim under the Florida Boiler Room Statute, and damages shall be calculated as laid out in Subsection C. Therefore, the Court AFFIRMS IN PART AND REVERSES IN PART Special Master Berger's Report and Recommendation as to Count IV and DENIES Defendants' Motions to Bar Class wide Rulings as to Liability and Damages on this claim. Furthermore, the Court VACATES this Court's prior Order On Plaintiffs Motion For Partial Summary Judgment dated November 17, 1994 (D.E. 511) to the extent that it suggests that reliance is an element of a cause of action under Florida's Boiler Room Statute.

### III. *Florida Common Law Claims*

#### A. *Aiding And Abetting Breach Of Fiduciary Duty—Count V*

In Count IV of the Complaint, Plaintiffs allege that Defendants Grosfeld, IPMC and Multivest, Inc. breached or aided and abetted MOI in breaching the fiduciary duty which it owed the Plaintiffs by engaging in the Alleged Scheme.

The Defendants argue that the issues involved in proving the existence of a fiduciary duty and the breach thereof require individualized proof. The Special Master agreed and held that liability for breach of fiduciary duty is not appropriate for class wide determination because there are individual questions regarding whether a fiduciary relationship existed.

The Court finds that it need not reach the issues regarding the appropriateness of class wide determinations because Plaintiffs' fiduciary duty claims are barred by the economic loss doctrine. The economic loss doctrine precludes this claim because the undisputed facts establish that it arises out of the con-

tractual relationship between MOI and its customers and seeks recovery of purely economic damages. Accordingly, the Court hereby Vacates its Order Denying Defendants' Motion for Summary Judgment Dismissing Count V Alleging Breach of Fiduciary Duty entered December 5, 1994 (D.E. 525) and finds that Count V of Plaintiffs' Amended Complaint is hereby Dismissed as a matter of law for the following reasons.

### 1. The Economic Loss Doctrine

 The economic loss doctrine bars recovery in tort between contracting parties in the absence of some conduct outside the contractual relationship resulting in personal injury or property damage. *See Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734 (11th Cir.1995); *AFM Corporation v. Southern Bell Telephone and Telegraph Co.*, 515 So.2d 180 (Fla.1987). The rationale underlying the economic loss doctrine is that parties should protect against the risk of economic loss through contract negotiations. *See Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899, 901 (Fla. 1987). The doctrine reinforces the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others. *Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc.* 620 So.2d 1244, 1246 (1993) (quoting Sidney R. Barrett, Jr., *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis*, 40 S.C.L. 891, 894 (1989)). Thus, Florida will not create a duty in tort to permit recovery of economic losses where the litigants have allocated the various risks of their bargain by contract. *Strickland–Collins Constr. v. Barnett Bank*, 545 So.2d 476, 477 (Fla. 2d DCA 1989). The doctrine is commonly applied to negligence claims, but clearly extends to bar claims for common law fraud and similar claims such as conspiracy and breach of fiduciary duty in the absence of conduct "independent" of the contractual relationship. *E.g., Interstate Securities v. Hayes Corp.*, 920 F.2d 769, 773–74 (11th Cir.1991) (fraud and civil theft); *Keys Jeep Eagle Inc. v. Chrysler Corporation*, 897

F.Supp. 1437 (S.D.Fla.1995) (breach of fiduciary duty); *Airlines Reporting Corporation v. Atlantic Travel Service, Inc.*, 841 F.Supp. 1166, 1168–69 (S.D.Fla.1993) (breach of fiduciary duty claim must be dismissed because dependent upon the existence of underlying contract).

 This Court is persuaded that the claims in Count V of Plaintiffs' Complaint are barred by the economic loss doctrine because they arise out of underlying contractual relationships and seek purely economic damages. According to Plaintiffs, the fraud giving rise to Count V was perpetrated by MOI's failure to disclose to Plaintiffs the existence of the Alleged Scheme. However, the Court notes that MOI's duty to inform the Plaintiffs of the Alleged Scheme arose, if at all, by virtue of MOI's relationship with Plaintiffs as their commodities broker which relationship was created and governed by the contracts between MOI and the Plaintiffs. As such, if Plaintiffs were damaged by MOI's breach of a duty, any resulting damages flow solely from a breach of these contracts. The Court's conclusion that the economic loss doctrine bars these claims is further reinforced by the fact that the terms of the contracts and Introductory Brochure clearly reflect that MOI and the Plaintiffs specifically allocated the risks of investment in ETOs among themselves when they entered into these agreements. Therefore, allowing these parties to pursue common law tort remedies against each other would undermine the reliability of their contractual relationships. *See e.g. Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So.2d 899, 901 (Fla. 1987) (rationale underlying the economic loss doctrine is that contract law and tort law are separate and distinct, and allowing plaintiffs to recover tort remedies in contract actions would undermine the reliability of contractual transactions and the allocation of risks agreed to by the parties); *Williams Electric Co. Inc. v. Honeywell, Inc.*, 772 F.Supp. 1225, 1237 (N.D.Fla.1991).

### 2. The Court's Prior Order

In this Court's December 5, 1994 Order, the Court found that Count V of Plaintiffs' Amended Complaint was not barred by the

economic loss doctrine on the grounds that no contractual relationship existed between Defendants and Plaintiffs. However, upon revisiting this issue *sua sponte* and upon further review of the case law in this Circuit, the Court finds that Defendants' status as non-parties to the agreements should not impact the Court's conclusion that Plaintiffs' breach of fiduciary duty claims against them are barred. The undisputed facts indicate that Plaintiffs seek to recover purely economic losses from the Defendants and, as stated above, Defendants' duty to disclose the Alleged Scheme to the Plaintiffs arose from the contractual relationship, whether they were parties to the customer contracts or not. In *Hoseline Inc. v. U.S.A. Diversified Products, Inc.*, 40 F.3d 1198 (11th Cir. 1994), the Eleventh Circuit held that the economic loss doctrine bars tort claims between parties who lack contractual privity where recovery is sought for economic losses arising from a contractual relationship without accompanying physical injury or property damage. *Id.* at 1200; *see also Casa Clara*, 620 So.2d at 1247–48 (court held that suit by homeowners against supplier of concrete used to build their homes was barred by the economic loss doctrine despite the absence of contractual privity between the parties).

Therefore, the Court finds as a matter of law that Plaintiffs' claims against Defendants based on breach of fiduciary duty are barred by the economic loss doctrine because the claims are dependent upon the existence of an underlying contract and seek purely economic damages. Accordingly, this Court's Order dated December 5, 1994 is vacated.

### 3. *Conclusion*

For the foregoing reasons, the Court finds that Count V of Plaintiffs' Amended Complaint is barred by the Economic Loss Doctrine. Therefore, the Special Master's Report and Recommendation as to Count V is Moot as are Defendants' Motions to Bar Class wide Rulings As To Liability and Damages regarding Count V. Furthermore, this Court's Order, dated December 5, 1995, Denying Defendants' Motion for Summary Judgment and Dismissing Count V Alleging Breach of Fiduciary Duty (D.E. 525) is hereby VACATED.

### B. *Breach of Contract—Count VI*

In Count VI of the Complaint, Plaintiffs allege that Defendants Grosfeld, IPMC and Multivest, Inc. are liable to Plaintiffs for breach of contract because MOI breached its obligations to Plaintiffs by failing to provide the services promised under their contract with MOI and described in the Introduction Brochure. Plaintiffs seek rescission for said breaches.

Defendants claim that the breach of contract claims require individualized proof and cannot be tried on a class wide basis. Special Master Berger agreed with the Defendants and held that Count VI cannot be tried class wide on the grounds the Florida Supreme Court has held that "fraud on individual contracts [cannot] be a basis for a class action." *See Lance v. Wade*, 457 So.2d 1008, 1009 (Fla.1984); *Osceola Groves v. Wiley*, 78 So.2d 700 (Fla.1955).

This Court agrees with the Special Master and finds that the parties have presented no reason why the Court should make an exception to well settled precedent in this case. Therefore, Special Master Berger's Report and Recommendation is RATIFIED, AFFIRMED AND ADOPTED as to Count VI of Plaintiffs' Complaint and Defendants' Motions to Bar Class wide Rulings as to Liability and Damages are hereby GRANTED as to Count VI.

### C. *Common Law Fraud, Negligent Misrepresentation, and Constructive Fraud—Counts VII, VIII, and XI*

In Count VII of the Complaint, Plaintiffs allege that Defendants Grosfeld, IPMC and Multivest, Inc. committed, aided and abetted, encouraged, or induced and participated in common law fraud. In Count VIII, Plaintiffs allege that Defendants failed to exercise reasonable care in representing the services provided by MOI and the true risks of investing in ETOs at MOI while inducing Plaintiffs to invest with MOI and to rely on MOI's representations. And, in Count XI Plaintiffs allege that Defendants participated in constructive fraud by acting as MOI's alter-ego and by aiding and abetting MOI's

violation of its duties to the Plaintiffs in failing to disclose material facts to the Plaintiffs regarding investing in ETOs through MOI.

Defendants argue that individual issues relating to these claims predominate and thereby render them unsuitable for class wide resolution. The Special Master agreed that these claims cannot be tried class wide because issues regarding damages, reliance, causation, and punitive damages require particularized proof. However, the Special Master found that the issue of materiality may be tried class wide. Defendants argue that materiality can only be determined on an individual basis because materiality depends on the total mix of information available to a person such that there must be individual determinations of the information available to each Plaintiff. Plaintiffs argue that the claims can be tried class wide in their entirety because there is at least an inference, if not a presumption, of reliance on these claims such that individualized determinations regarding reliance and causation are not necessary. This Court agrees with the Special Master that many elements of these claims require particularized proof. The Court further agrees that the issue of materiality can be determined class wide for the following reasons.

### 1. Class wide Determination of Common Law Fraud Claims

Plaintiffs argue that the Special Master misapplied *Lance v. Wade*, 457 So.2d 1008 (Fla.1984) when he made his decision to decertify the common law fraud claims. This Court disagrees. At the outset, the Court points out that the Special Master does not recommend that the common law fraud claims be decertified at this juncture. Rather, the Special Master proposes that the common issues of misrepresentation or omission and materiality be tried class wide, and then that the class should be decertified to allow the individual members of the class to pursue their common law fraud claims individually by proving the remaining elements with the benefit of collateral estoppel as to the issues that were decided class wide.

As to Plaintiffs' remaining arguments regarding the feasibility of trying common law fraud claims class wide, the Court finds as follows. The elements of a cause of action for fraud in Florida are:

(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party. In summary, there must be an intentional material misrepresentation upon which the other party relies to his detriment.

*Lance*, 457 So.2d at 1011. The elements of a cause of action for negligent misrepresentation are:

(1) a misrepresentation of a material fact; (2) knowledge by the representative as to the truth or falsity of the representation, or that the representation was made under circumstances in which he ought to have known of its falsity; (3) intent by the representator that the representation induces another to act on it; and (4) injury to the Plaintiff as a result of acting in justifiable reliance on the misrepresentation

*In re Checkers Securities Litigation*, 858 F.Supp. 1168, 1179 (M.D.Fla.1994). Thus, the elements of these common law causes of action are essentially the same for purposes of this analysis.

#### a. Reliance

As discussed above, it is well settled in securities fraud cases based on omissions and brought under the federal securities laws that plaintiffs are entitled to a presumption of reliance. The presumption has the primary effect of preserving class actions in these-cases where positive proof of reliance might otherwise make them unmanageable. *See* Section I, A and B, *supra*. This concept has been extended to allow a presumption of reliance in fraud on the market cases brought under federal securities laws. Again, this bolsters the policy underlying the securities acts of protecting investors by enabling them to bring class actions

where positive proof of reliance imposes a substantial obstacle. *See Basic, Inc. v. Levinson, supra.* In light of the policies aimed at protecting investors from securities fraud by making avenues available to them by which to pursue securities fraud claims, this Court has conducted a thorough review of the parties' memoranda in addition to its own independent research in an effort to assess the stance taken by Florida and federal courts on the reliance issue in common law fraud claims under Florida law. The Court finds that actual reliance must be proven as an element of common law fraud or negligent misrepresentation in Florida, and that neither Florida courts nor federal courts interpreting Florida law have adopted the presumption of reliance for these claims. Rather, it appears that the courts are not willing to entertain claims for common law fraud under Florida law as class actions.

The parties have not presented and the Court is not aware of any case law directly addressing whether courts are willing to adopt the *Affiliated Ute* presumption of reliance under the federal securities laws to satisfy the reliance element in fraud claims brought under Florida common law. However, it is clear that the courts do not recognize the fraud on the market presumption of reliance in cases under Florida law. *In re Cascade International Securities Litigation,* 840 F.Supp. 1558, 1571 (S.D.Fla.1993) (Florida does not recognize a "fraud on the market" theory to establish reliance, but requires allegations of actual reliance) (*citing In re Sahlen & Associates, Inc. Securities Litigation,* 773 F.Supp. 342, 371(S.D.Fla.1991); *Kahler v. E.F. Hutton & Co.,* 558 So.2d 144 (Fla. 3d DCA 1990). In light of the courts' position with respect to the fraud on the market presumption of reliance, it is cognizable that the courts are also not willing to adopt the *Affiliated Ute* presumption. Both of these theories were developed by federal courts with the same goal of removing a formidable obstacle for securities fraud plaintiffs to enable them to pursue class actions.

### b. Lance v. Wade

■ The Court points out that it does not strictly rely on the absence of a presumption of reliance in reaching the conclusion that the

claims based on common law fraud are not suitable for class wide determination. Courts are clearly split as to whether these claims are suitable for class certification at all. There is no indication in the reported case law that any court has attempted to reach class wide determinations as to liability and damages under Florida common law fraud claims in a class action. Nevertheless, in the interest of judicial economy and in light of the policies underlying Rule 23, the Court agrees with the Special Master that the class need not be decertified until after the preliminary elements of the common law fraud claims are decided. In holding that the claims may not be determined class wide in their entirety, the Court follows the *Lance* decision.

Plaintiffs argue that the Special Master misapplied *Lance.* This Court disagrees. The Plaintiffs are correct that *Lance* stands for the proposition that fraud claims arising out of individual contracts are not susceptible to class action treatment. However, this Court does not find that the facts of *Lance* are inapposite to this case. In *Lance,* the Florida Supreme Court appears to have used "individual contracts" as a means of describing and distinguishing the class from classes of plaintiffs united by a "joint pecuniary interest" or a "cooperative enterprise" which have been permitted in Florida. In other words, *Lance* suggests that where the plaintiffs' claims arise from individual relationships with the defendants, a class action will not be available. That being the case, *Lance* is applicable to the case before the Court in which all of the plaintiffs had individual contractual relationships with the Defendants. The Court is cognizant of Plaintiffs' assertion that *Lance* is inapposite because it is a misrepresentation case as opposed to an omissions case. However, as discussed in the preceding paragraph, this Court finds that Florida does not recognize the presumption of reliance in omissions cases brought under Florida common law. As such, Plaintiffs must affirmatively prove reliance in both omissions and misrepresentations cases. It is well recognized that proof of reliance in an omissions case is often more difficult than in a misrepresentations case given the difficulty

of proving what a person would have done had they been given certain information. As such, if the *Lance* court was concerned about the feasibility of proving reliance in a misrepresentation case on a class wide basis, it logically follows that that concern would be even greater in an omissions case.

Plaintiffs rely on *Kluge v. Crews*, No. 82–93–Civ–T–15, slip. op. (M.D.Fla. February 15, 1985), an unpublished federal opinion declining to follow *Lance* to preclude a Florida common law fraud securities class action, and *Broin v. Phillip Morris Cos.*, 641 So.2d 888, 1994 Fla.App. LEXIS 2269 (Fla.3d Dist.Ct. App. March 15, 1994), in which Florida's 3d District Court of Appeal reversed a Florida trial court that had refused to certify a class that included a fraud claim.[12] Plaintiffs also point out that at least one California court has certified a state common law fraud class action and held that in such a case, which was an omissions case, it was appropriate to employ an "inference" of reliance. *Mirkin v. Wasserman*, 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993). Despite these apparently inconsistent holdings, this Court follows *Lance*, a decision in the Florida Supreme Court, and holds that the common law fraud claims can not be decided in their entirety on a class wide basis and that the Plaintiffs must affirmatively prove reliance on an individualized basis with respect to these claims.

#### 2. Materiality

■ The law is well settled that materiality can be proven class wide. *See Huddleston*, 640 F.2d at 549. The Court is not convinced by Defendants' contention that *Basic* somehow altered the pre-existing law with regard to materiality. As the Defendants emphasize, the *Basic* definition is based on a reasonable investor standard and focuses on the total mix of information "made available." This in no way alters the pre-existing standard of materiality, and it certainly does not require particularized proof by the Plaintiffs. Furthermore, the Court points out that Defendants cited *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), in

support of its argument regarding materiality. *Virginia Bankshares* does not support Defendants' proposition.

#### 3. Conclusion

Based on the foregoing, the Court finds that Plaintiffs' claims based on Florida common law fraud cannot be fully adjudicated on a class wide basis. Therefore, the Court RATIFIES, ADOPTS AND AFFIRMS Special Master Berger's Report and Recommendation as to Counts VII, VIII and XI and GRANTS IN PART and DENIES IN PART Defendants' Motions to Bar Class wide Rulings as to Liability and Damages on these claims. The claims shall be determined class wide with regard to the omission and materiality. If Plaintiffs succeed in proving the class wide elements, then the class shall be decertified, and the Plaintiffs may proceed with individual causes of action in which collateral estoppel will apply and Plaintiffs will need only prove the remaining elements of reliance and loss causation. *See* Section VII, *infra*, for a further discussion of the procedural posture of this case in light of this Order.

### IV. Federal RICO Claims—Counts IX and X

In Counts IX and X of the Complaint, Plaintiffs allege that Defendants Grosfeld, IPMC and Multivest, Inc. violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a), (c) and (d) by perpetuating the Alleged Scheme through solicitation and business dealings using instrumentalities of interstate commerce including the mail and interstate telephone communications. Plaintiffs seek statutory damages for said RICO violations. Again, Defendants argue that these claims should be determined on an individualized basis.

■ The Special Master held that the RICO claims can be determined on a class wide basis given Plaintiffs' theory of the case, that no Plaintiff would have invested but for the Alleged Scheme. Defendants argue that

12. The Court notes that the *Broin* opinion, although scant as to its facts, is clearly not a securities or commodities case. Also, the Court

points out that the 3d DCA also certified the class in *Lance*, and that decision was reversed by the Florida Supreme Court.

questions of reliance necessitate the need for individualized proof, citing *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir.1991). For the reasons discussed below, this Court agrees with the Special Master that these claims may be determined on a class wide basis except that, the Court finds that, with respect to the requisite element of proximate cause, Defendants must be given the opportunity to rebut reliance by presenting proof that individual members of the Plaintiff class did not rely.

■ Plaintiffs' RICO claims are predicated on mail and wire fraud. The elements of the predicate acts of mail and wire fraud under RICO are the same. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987). They are: (1) intentional participation in a scheme to defraud another of money or property, and (2) the use of the United States mails or interstate wire facilities in furtherance of that scheme. *United States v. Downs*, 870 F.2d 613, 615 (11th Cir.1989); *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). In *Pelletier*, the Eleventh Circuit held that when a plaintiff relies on a violation of the mail or wire fraud statutes as a predicate act for civil RICO, he must demonstrate that his injuries were proximately caused by the commission of the predicate acts. *Pelletier*, 921 F.2d at 1499, 18 U.S.C. § 1964(c) ("Any person injured in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor ...") (emphasis added). The *Pelletier* Court addressed the question of whether the proximate cause requirement under RICO claims predicated on mail or wire fraud limits damages recoverable to those caused directly by the predicate acts (e.g., by reliance on fraudulent misrepresentations) or to those caused indirectly by the predicate acts (e.g., by purchasing property at a price that has been artificially inflated by a scheme to defraud). The Court held, "We have taken the more restrictive view, holding that a plaintiff has standing to sue under section 1964(c) only if his injury flowed directly from the commission of the predicate acts." *Pelletier*, 921 F.2d at 1499. According to the *Pelletier* court, "This means that, when the alleged predicate act is mail or wire fraud, the plain-

tiff must have been a target of the scheme to defraud *and must have relied* to his detriment on misrepresentations made in furtherance of that scheme." *Pelletier*, 921 F.2d at 1499–1500.

### A. Affirmative Proof of Reliance On A Class Wide Basis

Plaintiffs' theory of the case that no Plaintiff would have invested with MOI had they known of the Alleged Scheme does not present individual reliance issues. Courts which have addressed this issue in the context of class certification have found that common questions of law and fact clearly predominate over the reliance issue under these RICO claims, and individualized, fact-based inquiries into the particular facts and circumstances surrounding each investment. is unnecessary. *See Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D.Ill. 1989); *McMahon Books, Inc. v. Willow Grove Associates*, 108 F.R.D. 32 (E.D.Pa. 1985); *Weiss v. Winner's Circle of Chicago, Inc., et. al.*, 1992 WL 220686 (N.D.Ill.1992). In the case before the Court, there is a common core of information giving the Alleged Scheme a standard set of operative facts by which the Plaintiffs may demonstrate reliance; thus, the fact that the Plaintiffs may have been subject to individualized oral solicitation does not alter the conclusion that common questions predominate upon which a jury may determine on a class wide basis whether the Defendants targeted the Plaintiffs and whether any one would have invested through MOI had they known of the Alleged Scheme. *See Weiss*, 1992 WL 220686 at p. 3.

As the *Pelletier* Court indicated, to satisfy the proximate cause element of these RICO claims, the Plaintiffs must prove that they detrimentally relied on Defendants' alleged fraud. Plaintiffs' theory of the case essentially rests on an assertion of detrimental reliance—given the Defendants' omission of any information about the Alleged Scheme, the Plaintiffs relied on the lack of information and acted, to their detriment, by investing with MOI. As such, in order to affirmatively prove proximate cause, Plaintiffs would need to show that if they had been told about

the Alleged Scheme they would not have invested with MOI. However, it is well recognized by federal courts in the context of securities fraud litigation that requiring plaintiffs to affirmatively prove reliance would present an insurmountable obstacle for most plaintiffs where the case is based primarily on omissions. *See Basic*, 485 U.S. at 245, 108 S.Ct. at 990 ("Requiring a plaintiff to show a speculative state of facts, *i.e.*, how he would have acted if omitted material information had been disclosed ... would place an unnecessarily unrealistic evidentiary burden on the Rule 10b–5 plaintiff...." [*citing Affiliated Ute*, 406 U.S. at 153–54, 92 S.Ct. at 1472] ).

Given Plaintiffs' theory of the case, this Court finds that the Plaintiffs will be faced with precisely the unrealistic burden of proving a speculative state of facts envisioned by the *Basic* and *Affiliated Ute* Courts if required to affirmatively prove reliance as an element of their RICO claims. Therefore, this Court finds that the circumstances of this case present a situation like those in *Basic* and *Affiliated Ute* in which a presumption of reliance is appropriate. "Presumptions typically serve to assist courts in managing circumstances in which direct proof, for one reason or another, is rendered difficult." *Basic*, 485 U.S. at 245, 108 S.Ct. at 990 (*citing* 1 D. Louisell & C. Mueller, *Federal Evidence* 541–542 (1977)). Although numerous courts have addressed the issue of proximate cause under civil RICO claims, this court finds no decision directly addressing the question of whether a plaintiff must be required to affirmatively prove reliance under circumstances such as these. However, this Court finds that the policies underlying RICO and the securities acts of protecting investors and other victims of fraud support the use of a presumption here. Furthermore, a reading of RICO to allow the presumption to satisfy the proximate cause requirement under these circumstances conforms with the policy that RICO should be broadly interpreted. *See* Pub.L. 91–452, § 904(a), 84 Stat. 947, *cited in Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (RICO should "be liberally construed to effectuate its remedial purposes").

Accordingly, for the reasons set forth above and in light of the policies underlying the RICO statute, this Court finds that if the jury finds that the Defendants did in fact target the Plaintiffs and that Defendants' alleged omissions were of such a nature that no reasonable person would have invested had they known about them, then Plaintiffs are presumed to have relied on the omissions in satisfaction of the requisite element of proximate cause. Therefore, this Court agrees with the Special Master that a determination of liability under the RICO claims may be made class wide, despite the fact that the Special Master made no direct reference to the reliance requirement or to *Pelletier.* Furthermore, if Plaintiffs succeed in proving the common elements of RICO, then, as with the CEA claims, the burden will shift to the Defendants to prove by a preponderance of the evidence that individual members of the Plaintiff class did not rely on the alleged omissions.

### B. *Proof of Non–Reliance*

Although the Court finds that the Plaintiff class is entitled to a presumption of reliance, Defendants are entitled to present proof of non-reliance on an individual basis. Under the RICO mail and wire fraud provisions, a plaintiff must prove that he or she was a target of the defendant's scheme to defraud and that he or she detrimentally relied on misrepresentations made in furtherance of that scheme. *Pelletier*, 921 F.2d at 1499–1500. In this case, therefore, the Plaintiffs must prove that they would not have invested if they had been told about the Alleged Scheme. Thereafter, the Defendants must have the opportunity to prove that there are some individuals in the class who would have invested with MOI even if they knew about the Alleged Scheme, or that reliance on the omissions was unreasonable, or that there was some supervening cause unrelated to Defendants' alleged omissions that was the cause of their losses. As discussed with respect to the CEA claims, once the common issues have been litigated, the Court, after consultation with the parties, will develop a

procedure by which individualized proof of non-reliance may be manageably handled.[13]

### C. Damages

■ With respect to the calculation of damages proximately caused by the RICO violations, the Court agrees with the Special Master that, based on Plaintiffs' theory that they would not have invested but for the Alleged Scheme, the appropriate measure is the total amount of Plaintiffs' out of pocket capital invested which they would not have invested but for the Alleged Scheme. Therefore, damages will be measured according to the total amount of out of pocket capital invested by each individual plaintiff whom the Defendants are unable to prove did not rely. Profits and reinvested capital will not be calculated. Any trebling of damages would be to this amount. Furthermore, the Court agrees with the Special Master that these amounts are ascertainable through review of MOI's customer records. This measure of damages has the effect of returning the plaintiffs to the position they would have been in had they not invested through MOI and is consistent with Plaintiffs' theory of the case that they would not have invested through MOI had they known of Defendants' Alleged Scheme and that such investment was the cause of their losses.

Therefore, if Plaintiffs succeed in proving liability under the RICO claims, then an aggregate measure of damages will be determined through use of MOI's customer records based on the total amount of capital invested by all members of the class. This amount will be subject trebling and to adjustment to the extent of the amount of capital invested by those plaintiffs whom the Defendants are able to prove did not rely on the alleged omissions. The Court will address issues regarding claims administration in Section VII, *infra*.

Therefore, the Court finds that class wide rulings as to liability and damages under Counts IX and X of the Complaint are appropriate and manageable. Accordingly, the Court AFFIRMS IN PART AND DENIES IN PART Special Master Berger's Report and Recommendation as to Counts IX and X and GRANTS IN PART AND DENIES IN PART Defendants' Motions to Bar Class wide Rulings as to Liability and Damages on these claims. *See* Section VII, *infra*, for a further discussion of the procedural posture of this case in light of this Order.

## V. Fraudulent Transfer—Count XII

■ In Count XII of the Complaint, Plaintiffs allege that Defendants Grosfeld, Multivest, Inc., MVRE, SSM and Cypress violated § 726.106(1) or, in the alternative, § 726.106(2) of the Uniform Fraudulent Transfer Act by transferring the MVRE, SSM and Cypress shares to Grosfeld and the Jason Grosfeld Trust. The Special Master found that this Count may be determined in its entirety on a class wide basis. Neither party has presented the Court with any reason why this Count should not be determined class wide.

This Court agrees with the Special Master and finds that this Count may be tried class wide in its entirety. Accordingly, Special Master Berger's Report and Recommendation is RATIFIED, AFFIRMED AND ADOPTED as to Count XII of Plaintiffs' Complaint, and the Defendants' Motions to Bar Class wide Rulings as to Liability and Damages are hereby DENIED as to Count XII.

## VI. Affirmative Defenses

### A. Accord and Satisfaction

■ The Special Master held that those plaintiffs who entered into settlement agreements with MOI concerning the same trades with MOI that are the subject of this suit should not be included in the class. Plaintiffs do not object. This Court agrees with the Special Master, and, there being no objection, this Court RATIFIES, ADOPTS and AFFIRMS the Special Master's Report and Recommendation with respect to these plain-

---

**13.** The Court also points out that Defendants will be limited to the same scope of proof in rebutting reliance under the RICO claims as under the CEA claims. As noted in Section I, *supra*, the scope of proof shall be consistent with *Shores v. Sklar*, 647 F.2d 462, *supra*. *See also* Section VII, *infra*.

tiffs. Therefore, those plaintiffs who previously entered into settlement agreements with the Defendants concerning the trades with MOI that are the subject of this suit are EXCLUDED from the class.

### B. *Collateral Estoppel, Res Judicata, Arbitration and Award*

The Special Master held that those members of the class who chose to bring individual proceedings against MOI with respect to trades that are also the subject matter of this lawsuit should not be included in the class because there are individual issues with respect to whether affirmative defenses apply. Plaintiffs argue that the Special Master's recommendation swept too broadly in that it included plaintiffs who litigated but did not reach a final judgment or settlement agreement.

■ This Court agrees with the Special Master that those plaintiffs who previously litigated against the Defendants regarding trades with MOI that are the subject of this lawsuit should be excluded from the class. The Court also heeds Plaintiffs' concerns regarding individuals with whom no judgment or settlement agreement was reached. As to these individuals, the Court finds that they are not barred from the class if the litigation has terminated and no judgment or settlement was reached with-respect to these Defendants, as was the case with Plaintiff Waters.

Accordingly, the Court AFFIRMS Special Master Berger's Report and Recommendation as to those Plaintiffs who have previously litigated to final judgment or settlement regarding trades with MOI that are the subject of this suit. Therefore, those Plaintiffs who have previously litigated against the Defendants with respect to trades with MOI that are the subject of this suit and who have reached final judgment or settlement or whose cases are still pending are EXCLUDED from the class.

### C. *Members of the Class Who Profited*

The Special Master found that those members of the class who profited should be excluded in light of the Plaintiffs' theory of the case. Plaintiffs argue that Plaintiffs who profited should not be excluded, at least with respect to the Florida Boiler Room claims given the *Kane* holding that plaintiffs' gains and losses should not be netted.

■ The Court addressed this issue with respect to the application of *Kane* in Section II, C, *supra*. As the Court found in that discussion, because Plaintiffs are pursuing their theory of the case on a class wide basis alleging an overall class wide scheme, *Kane*'s transaction approach does not apply to these facts. Therefore, *Kane* does not require the Court to calculate transaction by transaction damages under these circumstances. Rather, damages will be measured according to the impact of the overall scheme, which is the losses the Plaintiffs incurred by virtue of their having invested with MOI. This measure of damages is consistent with Plaintiffs' theory of the case and with the applicable statutes and common law (allowing, of course, for trebling under RICO). It logically follows that those Plaintiffs who did not lose money through their investments with MOI or whose investments with MOI resulted in an overall profit were not damaged as a result of their relationships with MOI, and, therefore, they are not entitled to relief under any of the counts to be tried class wide.

Accordingly, this Court RATIFIES, ADOPTS, and AFFIRMS the Special Master's Report and Recommendation as to those Plaintiffs whose investments with MOI did not result in a loss or resulted in an overall profit, and those Plaintiffs are EXCLUDED from the class.

### D. *Estoppel, Waiver, Laches, Ratification*

■ The Special Master held that the affirmative defenses of estoppel, waiver, laches and ratification may be tried on a class wide basis. Defendants argue that the issue of whether Plaintiffs knew or should have known of the alleged omissions at some point cannot be tried on a class wide basis. This Court finds that these issues are relevant to the reliance and loss causation elements of the CEA and RICO counts. As discussed in Sections I and II, *supra*, the Court finds that

the Defendants must be given the opportunity to present proof of non-reliance on an individualized basis and that the scope of such proof will be limited by the holding in *Shores v. Sklar.* Therefore, this Court agrees with the Defendants that individualized proof regarding these issues is necessary to the extent that these issues effect proof of non-reliance. The method of proof of non-reliance which will be used in this case is discussed in Section VII, *infra.* Otherwise, the Court agrees with the Special Master that these issues may be litigated on a class wide basis, *i.e.* regarding materiality.

Accordingly, this Court AFFIRMS IN PART AND REVERSES IN PART the Special Master's Report and Recommendation. The affirmative defenses of estoppel, waiver, laches and ratification may be tried on a class wide basis, except that Defendants will be afforded the opportunity to present proof of non-reliance regarding the CEA and RICO counts within the scope laid out in Sections I and II, *supra,* and Section VII, *infra.*

### E. *Statute of Limitations*

■ The Special Master held that the statute of limitations issues may be handled class wide with special verdict interrogatories sent to the jury that will allow for individuals to be deleted from the class if a finding is made that those individuals traded before the applicable bar date and knew or should have known of the Alleged Scheme but continued to trade with MOI. Defendants argue that this requires individual determinations from the outset. This Court disagrees with Defendants.

As Plaintiffs point out, the Eleventh Circuit approved of a class wide determination regarding the statute of limitations in *Kennedy v. Tallant,* 710 F.2d 711 (11th Cir.1983). In *Kennedy,* the District Court submitted the issue to an advisory jury and adopted the jury's finding, concluding as a matter of law that the plaintiffs claim was timely filed. The Eleventh Circuit affirmed, finding,

> The prospectuses contained no clear statement or explanation of the facts which support Kennedy's claim. The record is simply devoid of any articulable event

which should have made Kennedy and the other class members question the legitimacy of appellants' activities prior to the December 1972 newspaper article.

*Kennedy,* 710 F.2d at 716. Similarly, in the case before the Court, the Court has determined that there is nothing in the record indicating that the Plaintiffs should have been on sufficient notice of the Alleged Scheme such that the Statute of Limitations should have begun to run at any time before the initiation of the CFTC action. *See* Omnibus Order Denying Defendants' Motion for Summary Judgment to Dismiss Count IV Based on the Florida Securities Act Because the Claims Are Barred By the Statute of Limitations (D.E. 331). Accordingly, as in *Kennedy,* the Court finds that class wide determination of whether the Plaintiffs' claim was timely filed is appropriate under the circumstances of this case.

As the Special Master points out, this case was filed on April 23, 1990. The statute of limitations on the CEA and CFTC claims is within two years, and the bar date would be April 23, 1988. The statute of limitations, as agreed to by the parties, on the RICO claims is within four years. And, the statute of limitations for the Florida Boiler Room claims is within two years with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, but not more than five years from the date the alleged violation occurred.

Plaintiffs may be able to demonstrate fraudulent concealment by virtue of the theory of the case which they have alleged. If that is the case, then the burden of production shifts to the Defendants to show that the Plaintiffs were on notice as of some time before initiation of the CFTC action. It is up to Defendants to elect how to prove notice, although the Court will not allow them to call absent class members. It is up to the jury to decide the issue of notice, and the Court finds that the issue may be decided on a class wide basis.

Accordingly, this Court AFFIRMS the Special Master's Report and Recommendation with respect to the Statute of Limita-

tions Issues. These issues may be determined on a class wide basis, and Defendants' Motions to Bar Class Wide Rulings are DENIED as regards these issues.

## VII. *Conclusion*

Plaintiffs' Amended Class Action Complaint contains twelve counts. Defendants claim that class treatment of Plaintiffs' claims would violate Defendants' rights to a fair trial. After a thorough review of the facts and the law relevant to all counts, and in light of the Special Master's Report and Recommendation, this Court agrees that certain of the elements of these claims require individualized proof However, in light of the policies favoring class action litigation in the securities fraud context, the Court finds that this case should proceed as a class action to the extent that this can be done on a fair and manageable basis. With these considerations in mind, and for the reasons discussed below, the Court finds as follows.

**Counts I, II** and **III** based on the **CEA,** may be determined on a class wide basis, except that Defendants will be given the opportunity to rebut the presumption of reliance on an individual basis subsequent to the conclusion of the jury trial currently scheduled for May 20, 1996. **Count IV,** based on **Florida's Boiler Room Statute,** may be determined in its entirety on a class wide basis. **Count V,** alleging aiding and abetting the breach of fiduciary duty, is barred by the Economic Loss Doctrine. **Count VI,** alleging **Breach of Contract,** may not be tried on a class wide basis. **Counts VII, VIII** and **XI,** based on **Common Law Fraud, Negligent Misrepresentation,** and **Constructive Fraud,** may only be determined on a class wide basis with respect to the common elements of proof that Defendants omitted a material fact and materiality, and the remaining elements must be determined individually. **Counts IX** and **X,** based on **RICO,** may be determined on a class wide basis, except that Defendants will be given the opportunity to rebut the presumption of reliance on an individual basis subsequent to the conclusion of the jury trial currently scheduled for May 20, 1996. **Count XII** based on

**Fraudulent Transfer,** may be determined in its entirety on a class wide basis.

In addition, Defendants have asserted numerous Affirmative Defenses and claim that these require individualized determinations. Again, the Court finds that litigation of the class action will not be unduly hampered by consideration of the issues that arise out of the affirmative defenses.

### A. *Procedural Posture Of The Case In Light Of This Order*

In light of the fact that there are individual issues in this case, the Court finds that the fairest and most manageable way to proceed with litigation is as follows:

First, a determination will be made of who the members of the class are in the wake of this Order. As discussed in Section VI, *supra,* the following persons shall be excluded from the Plaintiff class: (1) those persons who did not lose money (or, "broke even") as a result of their relationships with MOI; (2) those persons who profited as a result of their relationships with MOI; (3) those persons who previously entered into settlement agreements with the Defendants concerning trades with MOI that are the subject of this suit; and (4) those persons who previously obtained a final judgment against or reached a settlement with the Defendants regarding trades with MOI that are the subject of this suit. This determination is referred to the Special Master, Mitchell W. Berger, with respect to any and all matters concerning who the members of the Plaintiff class will be for resolution before trial. Plaintiffs claim that there are computer records available through which the Court may ascertain who invested how much with MOI and when. Plaintiffs are directed to identify, through such records, which persons are in the Plaintiff class as a result of this Order to the Special Master no later than February 2, 1996. Defendants shall submit Objections no later than 15 days from the date on which they are served with Plaintiffs' evidence and Plaintiffs shall respond to the Objections within ten days thereafter. No extensions shall be granted with respect to these deadlines. The Special Master shall schedule and conduct a hearing as soon as practicable to resolve all

disagreements with respect to the identity of the class members.

Second, the parties will proceed to jury trial on the common issues affecting liability under all counts. Accordingly, the Plaintiffs will bear the burden of proving by a preponderance of the evidence (1) all of the elements of liability under the CEA claims except reliance; (2) all of the elements of liability under the Florida Boiler Room claims; (3) materiality under the common law fraud, negligent misrepresentation, and constructive fraud claims; (4) all of the elements of liability under the RICO claims except reliance; (5) all of the elements of liability under the fraudulent transfer claim; (6) all of the elements of liability under the fraudulent transfer claim; and (7) the Plaintiff class's total (aggregate) out of pocket losses. Defendants will be given the opportunity to rebut Plaintiffs' evidence, including evidence of damages, on a class wide basis only. If at the end of this process, the jury returns a Plaintiffs verdict on the Boiler Room claim, the Court will then enter partial final judgment [14] in the amount of the aggregate out of pocket losses determined by the jury.[15]

Third, if the jury returns findings on the CEA and RICO claims which are favorable to the Plaintiffs, the Court, after consultation with the parties, will develop a procedure by which non-reliance under the CEA and RICO counts may be litigated on an individual basis in a manageable and fair manner.[16] The Court points out that the burden will be on the Defendants at that stage in the litigation to prove individual non-reliance by a preponderance of the evidence. Furthermore, the Defendants will be limited, as dis-

cussed in Section I, *supra*, to showing either that a plaintiffs reliance was unreasonable under the circumstances or that a plaintiff, even if aware of the Alleged Scheme, would nevertheless have invested with MOI.[17] In the event the Defendants can demonstrate non-reliance with respect to individual plaintiffs, the aggregate out of pocket losses as previously determined by the jury will be adjusted to account for those plaintiffs whom the Defendants are able to prove did not rely on the alleged omissions and trebled pursuant to the RICO statute.

Finally, the claims for common law fraud, negligent misrepresentation and constructive fraud will be decertified in the event the jury makes findings favorable to the class on the common issues. Therefore, as noted in Section III, the Plaintiffs will be able to proceed with individual lawsuits on these claims, presumably with the advantage that the jury's findings regarding the omissions and materiality will be binding based on collateral estoppel.

At this point, the Court also notes that should the Plaintiffs succeed in proving liability under any of the counts in the Complaint, the parties will be given the opportunity to be heard on the matter of claims administration so that an efficient and manageable method of notice and claims distribution may be determined.

### B. *Conclusion*

Based on the foregoing facts and conclusions, it is hereby

ORDERED AND ADJUDGED that the Special Master's Reports and Recommendations dated January 13, 1995 and May 5, 1995

---

14. If there is a Plaintiffs verdict on the fraudulent transfer claim as well as a Plaintiffs verdict on the Boiler Room claim, the Court will also enter partial judgment on Count XII. The Court is cognizant of the policies both in favor of and against entering partial judgments. If the parties reach the point anticipated herein such that partial judgment may be entered on the Boiler Room claims, the Court will balance those considerations at that juncture.

15. The Court recognizes that if there is a recovery and an aggregate award is entered, there may potentially be excess funds subsequent to class distribution because of the natural prob-

lems with class notification that are to be expected with such a large class. The Court's inclination with respect to the excess is a pro rata distribution. However, as the parties have not had the opportunity to be heard on this issue, if, and when, there is a recovery, the parties will be given the opportunity to be heard.

16. If no such procedure can be developed, the Court may decertify the class.

17. The Court notes, as discussed in Section I, the testimony of opt-outs is irrelevant to this issue and will not be permitted to prove non-reliance.

are AFFIRMED IN PART AND RE-VERSED IN PART as set forth above. Therefore, Defendants' Motions to Bar Class Wide Rulings as to Liability and Damages (D.E. 410 and 424) are GRANTED IN PART AND DENIED IN PART.